UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY; and AMERICAN ZURICH INSURANCE COMPANY,<br><br>      Plaintiffs,<br><br>  v.<br><br>TRANS CAL ASSOCIATES; TRANS CAL INSURANCE ASSOCIATES, INC.; MARK SCOTT; GRAY SCOTT; and DOES 1-50,<br><br>      Defendants,<br><br>AND RELATED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT. | NO. CIV. 2:10-1957 WBS KJM<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiffs Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and American Zurich Insurance Company filed a complaint against defendants Trans Cal Associates ("Trans Cal"), Trans Cal Insurance Associates, Mark

1

Scott, and Gray Scott on July 22, 2010, arising from defendants' alleged failure to remit over $1.1 million in insurance premiums that defendants had allegedly collected for plaintiffs. Trans Cal filed two counterclaims against plaintiffs and a third-party complaint against Zurich American Insurance Company of Illinois (collectively "Zurich") arising from, <u>inter alia</u>, Zurich's August 4, 2010, affidavit and notice directing Wells Fargo Bank, National Association, to refuse payment of funds from Trans Cal's accounts for three days. Zurich now moves to dismiss the conversion claim[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   <u>Factual and Procedural Background</u>

Zurich[2] filed a complaint against defendants for breach of contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, conversion, fraud, and accounting on July 22, 2010. (Docket No. 1.) On August 4, 2010, Nancy Dow, a representative of Zurich, delivered an "Affidavit and Notice of Adverse Claim to Funds Deposited in Bank Account" ("affidavit and notice") to Wells Fargo Bank, National Association ("Wells Fargo"), pursuant to California Financial Code section 952. (Original Countercl. & Original Third Party Compl. of Trans Cal ¶ 14, Ex. A (Docket No. 28).) Dow declared under penalty of

---

[1] The other claim arises from the alleged fact that Trans Cal has been refunding Zurich's customers when the insurance policies were cancelled. This claim is not a subject of the motion to dismiss.

[2] Zurich American Insurance Company of Illinois is not a plaintiff.

2

perjury to Wells Fargo that Trans Cal was a fiduciary of Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and American Zurich Insurance Company[3] as to funds in the sum of $1,161,681.69 "now on deposit . . . in the name of 'Trans Cal Associates[,]'[] in Account No. 6528350298, and in other accounts in the names of Trans Cal Associates and/or Trans Cal Insurance Associates, Inc." (Id. Ex. A.)

Based on the belief that the funds were about to be misappropriated, Dow stated: "[T]he undersigned, Nancy Dow, directs that you refuse payment of funds from the accounts of Trans Cal Associates and/or Trans Cal Insurance Associates, Inc. for a period of three court days from the date that you receive this Affidavit and Notice and for such further time as may be ordered hereafter by a court of competent jurisdiction."[4]  (Id.)

Trans Cal had trust, payroll, and operating accounts ("accounts") with Wells Fargo. (Id. ¶ 9.) The trust account contained no Zurich funds but instead contained funds of nine other insurers totaling $109,253.77, with an additional amount of $2,116.52 for possible commission payments. (Id. ¶ 12.) Trans

---

[3] In the affidavit and notice, Dow did not name Zurich American Insurance Company of Illinois.

[4] Nancy Dow provided the facts on which she based her declaration. These facts included that the contract between Trans Cal and plaintiffs provided for Trans Cal to collect, hold in trust, and remit payments owed to plaintiffs. (Original Countercl. & Original Third Party Compl. of Trans Cal Ex. A (Docket No. 28).)  The facts also included that Trans Cal had failed to remit $1,161,681.69 owed to plaintiffs, despite plaintiffs' request, and that Trans Cal claimed that it did not have sufficient funds to comply with the contractual duty to remit the insurance premiums, did not know the location of plaintiffs' funds, and threatened to file bankruptcy "if Zurich employ[ed] any 'heavy handed' tactics to recover the money." (Id.)

3

Cal does not allege how much was contained in the other two accounts.  Following delivery of the affidavit and notice, Trans Cal alleges that "Counter-Defendants froze all Accounts of Trans Cal during the period August 4, 5, and 6, 2010[,] thus depriving Trans Cal of access to its deposits and thus preventing all withdrawals of money on deposit, including checks written against the accounts."[5]  (Id. ¶ 15.)

Trans Cal alleges that "the wrongful interference with the Accounts constituted a conversion of said Accounts."  (Id.)  Zurich allegedly knew or should have known that the trust account contained other insurers' funds and that the other accounts did not contain Zurich's funds.  (Id. ¶ 16.)  The damages are presently unknown but include returned checks not honored and rejected loan and credit card payments.  (Id. ¶ 18.)  On September 3, 2010, Trans Cal filed two counterclaims and a third-party complaint.  Zurich now moves to dismiss the conversion claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

II. Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent

---

[5] In opposition, Trans Cal states that the payroll and operating accounts were released before the expiration of the three days.  (Def.'s Opp'n to Mot. to Dismiss Def.'s Countercl. for Conversion at 2:21-23 (Docket No. 41).)  This was not clear from the allegations and it remains unclear how long these two accounts were frozen.

4

with" a defendant's liability, it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). In deciding whether a plaintiff has stated a claim, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).

California Financial Code section 952 requires banks to "disregard[]" adverse claims to deposits and immunizes banks from liability to the adverse claimant.[6] Cal. Fin. Code § 952; see generally AARTS Prod., Inc. v. Crocker Nat'l Bank, 179 Cal. App. 3d 1061, 1069 (6th Dist. 1986) ("[T]he purpose of Financial Code section 952 is to protect banks from getting caught in a crossfire between its depositors and strangers claiming entitlement to its accounts."). This general rule applies even

---

[6] California Financial Code section 952 provides:

> Notice to any bank of an adverse claim . . . to a deposit standing on its books to the credit of . . . any person shall be disregarded, and the bank, notwithstanding the notice, shall honor the checks, notes, or other instruments requiring payment of money by or for the account of the person to whose credit the account stands . . . , without any liability on the part of the bank; subject, however, to the exceptions provided in subdivisions (a) and (b): . . . .

Cal. Fin. Code. § 952.

when the deposit account clearly indicates that the depositor is a fiduciary of the adverse claimant. Cal. Fin. Code § 952(c); see generally Desert Bermuda Prop. v. Union Bank, 265 Cal. App. 2d 146, 151-152 (2d Dist. 1968) ("[W]hen the Legislature adopted what is now [section 952] it relieved banks from any general duty to police fiduciary accounts (a duty which a bank could not reasonably be expected to carry out effectively). In 1941 the protection of the statute was further broadened by an amendment applying its provisions to accounts carrying a specific qualifying designation, such as agent or trustee.").

There are two exceptions to the general rule that requires banks to ignore adverse claims and immunizes them in doing so. First, subsection (a) requires banks to refuse payment of the deposit for no more than three court days upon delivery of an affidavit[7]

> stating that of the adverse claimant's own knowledge the person to whose credit the deposit stands . . . is a fiduciary for the adverse claimant and that the adverse claimant has reason to believe the fiduciary is about to misappropriate the deposit . . . , and stating the facts on which the claim of fiduciary relationship and the belief are founded . . . .

Cal. Fin. Code § 952(a) (emphasis added). In refusing payment of the deposit for three days, the bank is "without liability on its part and without liability for the sufficiency or truth of the facts alleged in the affidavit." Id. The second exception to

---

[7] Section 952 does not define affidavit, but California Civil Procedure Code section 2003 defines an affidavit as "a written declaration under oath, made without notice to the adverse party." Cal. Civ. Proc. Code § 2003. Section 2015.5 provides that an unsworn declaration under penalty of perjury under the laws of the state of California suffices for an affidavit. Id. § 2015.5.

6

the general rule is provided in subsection (b), which provides that "[i]f at any time, either before, after, or in the absence of the filing of an affidavit by the adverse claimant," the adverse claimant delivers a court order or injunction to the bank, "the bank shall comply with the order or injunction, without liability on its part."[8]  Id. § 952(b).

Here, Trans Cal alleges that Zurich's use of section 952 was wrongful because Zurich knew or should have known that the trust fund contained other insurers' funds and that the other accounts did not contain Zurich's funds.  Without any remedies provided under section 952, Trans Cal brings a claim for conversion.

"Conversion is the wrongful exercise of dominion over the property of another."  Oakdale Vill. Group v. Fong, 43 Cal. App. 4th 539, 543 (3d Dist. 1996).  "The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 601 (9th Cir. 2010).  "Conversion is also a strict liability tort . . . .  Therefore, questions of good faith, lack of knowledge and motive are ordinarily immaterial."  Oakdale Vill. Group, 43 Cal. App. 4th at 544.

"It is necessary to show that the alleged converter has

---

[8] It is not without precedent that an adverse claimant delivers an affidavit, but then decides not to seek a court order before the expiration of the short statutorily-prescribed period. See, e.g., Steven R. Perles, P.C. v. Kagy, No. Civ.A. 01-0105, 2005 WL 3262905, at *3 (D.D.C. Aug. 29, 2005).

7

1  assumed control over the property 'or that the alleged converter
2  has applied the property to his own use.'" Mindys Cosmetics,
3  Inc., 611 F.3d at 601 (quoting Oakdale Vill. Group, 43 Cal. App.
4  4th at 543-44).  "It is not necessary that there be a manual
5  taking of the property." Oakdale Vill. Group, 43 Cal. App. 4th
6  at 544.  Even when there is a manual taking, the alleged
7  converter must assume control over the property or apply the
8  property to his own use.  See, e.g., Jordan v. Talbot, 55 Cal. 2d
9  597, 610 (1961) (holding that there was no conversion when lessor
10 moved lessee's property to a storage unit).
11         Here, Trans Cal has stated enough facts to survive
12 Zurich's motion to dismiss the conversion claim.  Trans Cal does
13 not need to show that Zurich applied the deposits to its use or
14 even possessed them.  In Pilch v. Milikin, 200 Cal. App. 2d 212,
15 224 (2d Dist. 1962), in holding that the plaintiff had stated a
16 claim for conversion, the court noted that conversion has been
17 defined broadly as "any act of dominion wrongfully exerted over
18 another's personal property in denial of or inconsistent with his
19 rights thereto" and that it was immaterial that the third-party
20 bank possessed the money and not the defendant.  Id.  That case
21 involved a defendant joint account holder who refused to execute
22 a joint withdrawal form to release money that belonged to the
23 plaintiff.  Id.
24         Because of the affidavit and notice from Zurich's
25 representative Dow and pursuant to section 952(a), Wells Fargo
26 allegedly refused payment of the deposits in Trans Cal's three
27 accounts on August 4, 5, and 6, 2010.  (Original Countercl. &
28 Original Third Party Compl. of Trans Cal ¶¶ 14-15, Ex. A.)  The

8

1  trust account contained other insurers' funds and the payroll and
2  operating accounts contained Trans Cal's funds.  (See id. ¶ 16.).
3  These facts plausibly suggest that Zurich wrongfully "assumed
4  control over the property," Mindys Cosmetics, Inc., 611 F.3d at
5  600, when it directed the bank to refuse payment on Trans Cal's
6  accounts.
7           At this stage, the court is unable to conclude that the
8  affidavit and notice was privileged communication pursuant to
9  California Civil Code section 47(b).  "The usual formulation is
10 that the privilege applies to any communication (1) made in
11 judicial or quasi-judicial proceedings; (2) by litigants or other
12 participants authorized by law; (3) to achieve the objects of the
13 litigation; and (4) that have some connection or logical relation
14 to the action." Silberg v. Anderson, 50 Cal. 3d 205, 215 (1990).
15 The privilege has been extended to "any publication . . . that is
16 required or permitted by law in the course of a judicial
17 proceeding to achieve the objects of the litigation, even though
18 the publication is made outside the courtroom and no function of
19 the court or its officers is invoked." Albertson v. Raboff, 46
20 Cal. 2d 375, 380-81 (1956).
21          Not every affidavit and notice pursuant to section 952
22 is protected by the litigation privilege.  Cf. Action Apartment
23 Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251
24 (2007) ("[C]ourts have developed a test for determining when a
25 communication regarding prospective litigation is subject to the
26 litigation privilege.  Because this test involves a question of
27 fact, it is impossible to conclude . . . that every action
28 brought pursuant to the notice provision, [which prohibits

9

1  landlords from serving notices to quit under certain
2  circumstances,] necessarily would be barred by the litigation
3  privilege.").  The affidavit and notice does not mention
4  litigation or the threat of litigation, and the court cannot
5  conclude without a factual inquiry that it was intended to
6  achieve the objects of litigation.  Cf. id. ("Whether a
7  prelitigation communication relates to litigation that is
8  contemplated in good faith and under serious consideration is an
9  issue of fact.").

10              Accordingly, because Trans Cal has stated a claim for
11 conversion and a factual inquiry is required to determine whether
12 the litigation privilege bars the claim, IT IS HEREBY ORDERED that
13 Zurich's motion to dismiss the claims for conversion in Trans Cal's
14 counterclaim and third party complaint be, and the same hereby is,
15 DENIED.

16              DATED:  November 30, 2010

18              _____
                WILLIAM B. SHUBB
19              UNITED STATES DISTRICT JUDGE

10